IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THOMAS HILL, ET AL., | |
| Plaintiffs, | Civil No. 08-1039 (GAG/BJM) |
| v. | |
| CULEBRA CONSERVATION AND DEVELOPMENT AUTHORITY, ET AL., | |
| Defendants. | |

# REPORT AND RECOMMENDATION

Plaintiffs Thomas Hill, Dorothy Hill, and the legal partnership formed by them (collectively "Hill" or "plaintiffs") bring this case against defendants Carlos Géigel-Bunker ("Géigel"), Abraham Peña-Nieves, the Culebra Conservation and Development Authority ("ACDEC"), and the Municipality of Culebra (the "Municipality") (collectively "defendants") alleging violations of Title 42, United States Code, Section 1983 ("Section 1983"), various Puerto Rico laws, and Puerto Rico constitutional guarantees. Specifically, plaintiffs allege that defendants removed and destroyed their property without just compensation and without due process of law.

Defendants moved for summary judgment (Docket Nos. 66, 114) and plaintiffs opposed. (Docket No. 102, 119). The presiding district judge referred the motion to me for a report and recommendation. (Docket Nos. 110). However, in reviewing the parties' submissions on the summary judgment motion, I noted that neither party addressed whether plaintiffs' Section 1983 claims were ripe for this court's review. Accordingly, I ordered plaintiffs to show cause why dismissal of their federal claims was not required on ripeness grounds, giving defendants seven days thereafter to respond (the "show-cause order"). (Docket No. 141). Plaintiffs submitted a motion in compliance with the show-cause order (Docket No. 150), and defendants opposed (Docket No. 152). The court has reviewed the parties' submissions, and for the following reasons, finds that plaintiffs' claims should be dismissed.

Hill, et al. v. Culebra Conservation and Development Authority, et al.                                   Page 2
Civil No. 08-1039 (GAG/BJM)
**REPORT AND RECOMMENDATION**

## BACKGROUND

By way of background, the court sets forth the following facts taken from the record on summary judgment. The court notes that various procedural deficiencies and disputes plague the parties' opposing statements of material facts.[1]

Plaintiffs Thomas and Dorothy Hill own real property located in the Municipality of Culebra (the "property") which they purchased in 1998. (Docket No. 102-3, ¶ 1). The property includes an easement, in the form of a dirt road, granting public access to the oceanfront adjacent to the property. (Id., ¶ 5, 6). Plaintiffs maintain the dirt road at their own cost. (Id., ¶ 8).

Defendant Géigel has served as in-house counsel to ACDEC and the Municipality of Culebra since 2005. (Docket No. 66-2, p. 2). On March 28, 2007, Géigel sent a letter to counsel for the Hills stating that, pursuant to public hearings in which it was decided that the Municipality of Culebra's policy would be "to keep open all the roads that provide access to the beaches of Culebra," it was requested that the Hills open the gate and fence in their yard which blocked the path to the beach. (Docket No. 66-15) (original emphasis). On April 25, 2007, Géigel sent a follow-up letter stating that the property had been visited by members of the ACDEC, who had determined that the Hills were in violation of law and that failure to open the gate and fence would result in a $5,000 fine.

---

[1] The procedural deficiencies include (1) plaintiffs' failure to directly respond to defendants' Statement of Uncontested Fact, instead submitting a separate opposing statement; (2) defendants' failure to include record citations for certain of their assertions of fact; and (3) defendants' failure to number or otherwise identify their exhibits. In general, however, in determining what facts are supported by the evidentiary record, I have applied Local Rule 56(e):

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

(Docket No. 66-13, 102-10).[2] The following month, a meeting took place at the Hill property among the Hills, defendant Géigel (presumably representing ACDEC and the Municipality), representatives from the ACDEC, and their respective counsel. (Docket No. 102-3, ¶ 9). During the meeting, plaintiffs rejected defendants' proposal to move the fence (Id., ¶ 10, 11) and made a verbal offer to provide access to the beach.[3] (Docket No. 66-2, p. 6, ¶ 3). The parties agreed that the Municipality or the ACDEC would apply for and obtain any permits necessary to construct a road and parking area outside plaintiffs' fence at their own cost, and would include the property and the Hills themselves as additional insureds under applicable insurance policies. (Docket No. 102-3, ¶ 10, 11). However, the parties did not take any of these steps. (Id., ¶ 12).

After the Municipality commenced the process of providing access to its beaches, outbursts of violence and property destruction occurred between those who wanted access open and those who wanted the accesses closed, occasioned by certain individuals in Culebra illegally removing barriers to access that they deemed contrary to the law. (Docket No. 66-2, p. 2). The parties dispute the extent to which vandalism of plaintiffs' property was a part of this wave of violent vigilantism, but for the purposes of this motion, it is undisputed that the Hills' fence was vandalized at some point

---

[2] The document submitted by defendants appears to be an uncertified translation or retyped copy of the original, which was not made a part of the record on this motion. For example, after the letter references a letter sent on April 28, 2007, the letter states in parenthesis "(should be March 28, 2007)" and after the letter references a wooden fence, the letter states in parenthesis "(should be rope)." Defendants are advised that they should submit original documents, along with certified translations, and refrain from altering the evidence. However, given that plaintiffs not only failed to object to this exhibit but referenced and attached it in their own statement of facts (Docket No. 102-10), the court allows the document for the purposes of this motion.

[3] Defendants object to plaintiffs' assertions of fact 10-12, concerning discussions at the May 2007 meeting, on the grounds of Federal Rule of Evidence 408. (Docket No. 109-2). However, pursuant to that rule, the court admits facts and evidence of the parties' settlement negotiations to the extent that they are not offered "to prove liability for, invalidity of, or amount of a claim." F.R.E. 408. The court further notes that defendants themselves propose as an uncontested fact that during the same meeting, "the Hills made a verbal offer to provide access to the beach", belying their supposed concern with admitting evidence of the parties' settlement negotiations. (Docket No. 66-2, p. 6).

Hill, et al. v. Culebra Conservation and Development Authority, et al.                          Page 4
Civil No. 08-1039 (GAG/BJM)
**REPORT AND RECOMMENDATION**

in November 2007.[4]  The wave of violence in Culebra ceased after all of the blocked accesses were opened.  (Id., p. 3).

During a period of escalated violence and property destruction in December 2007, Mayor Peña tasked defendant Géigel with immediately opening any remaining blocked accesses in order to defuse the pattern of violence and vandalism.  (Id., p. 1, 2).  On December 20, 2007, Géigel opened the remaining accesses, accompanied by Culebra Chief of Police Ovidio Ortíz Ayala, and municipality engineer Gil R. Nieves.  (Id., p. 4-5).  Among the accesses opened by Géigel was the fence located on plaintiffs' property.  (Id., p. 2).  Engineer Nieves certified that the access on the Hills' property was blocked in an unsafe manner that did not permit the safe evacuation of visitors because it was impossible for vehicles to turn around in some circumstances.  (Id., p. 5).  Thus, the municipality removed pieces of fence lumber and the metal gate from the Hills' property.  (Id., p. 4).  The municipality also viewed the pieces of lumber as a safety hazard which could be used as a weapon in the case of a future confrontation, and the ACDEC maintained the lumber in its possession.  (Id., p. 4-5).

Plaintiffs received their first notice concerning the fence removal in a December 20, 2007 "Order to Keep Accesses Open" from the ACDEC, which informed plaintiffs after the fact that ACDEC "removed the wooden fence that replaced the gate that provides access to Mosquito (Vacas)

---

[4] Defendants fail to support with record evidence their assertion that "[t]he Hills admit that their fence was vandalized twice during November 2007." (Docket No. 66-2, p. 2). They cite to "plaintiffs exhibits N, O, P, Q" which are not identified with any citations to the docket, cannot refer to plaintiffs' later-filed exhibits on this motion which stop at exhibit J or earlier-filed exhibits on the first motion for summary judgment (Docket No. 9) which stop at exhibit I, and the court is unable to locate any other such exhibits in the record. For their part, plaintiffs include the unrefuted assertion that "[b]etween November 8 and December 20, 2007, no incidents of violence occurred in [plaintiffs'] Property." (Docket No. 102-3, ¶ 16). Plaintiffs cite documents also attached to defendants' motion, two Spanish-language police reports, dated November 6 and 9, 2007, reporting damage to plaintiffs' fence. These untranslated exhibits fail to comply with the translation requirements of Local Rule 10(b). Nonetheless, based on plaintiffs' unrefuted assertions, the court deems it fair to consider undisputed for the sake of this motion the fact that the fence was vandalized at some point in November.

Beach and a piece of rope that impedes access to the beach." (Docket Nos. 102-3, ¶ 15; 66-20; 102-9). The December 20, 2007 Order stated that plaintiffs would have ten days from the date of notification of the order to request an administrative hearing before the ACDEC. (Docket Nos. 66-20, 102-9). Such hearings are presided over by an independent administrative law judge who is a licensed attorney. (Docket No. 66-2, p. 11, ¶ 2).

Plaintiffs did not make a request for such a hearing nor have they attempted to use any other state procedures available to them to obtain just compensation for the alleged taking. (Docket No. 150, p. 4). In particular, plaintiffs asserted in their response to the show-cause order that they did not seek any such remedies because they "believed at the time and continue to believe now that any attempt to seek fair redress before the state would have been futile." (Id.). Plaintiffs do not put forth affidavits or any other form of evidence concerning what they claim is a "founded belief", asserting through counsel that do not have "any reason to believe that any administrative process would be impartial, transparent or fair . . . based on the brazen nature of the December 20, 2007 operation. . . ." (Id.).

## ANALYSIS

### I.     Fifth Amendment Claim

First, plaintiffs allege a takings claim under the Fifth Amendment. However, the Supreme Court has held that "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. . . . Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 (1985) (internal citation omitted). Consequently, "it is well-settled that 'if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.'" SFW Areceibo Ltd.

Hill, et al. v. Culebra Conservation and Development Authority, et al.     Page 6
Civil No. 08-1039 (GAG/BJM)
**REPORT AND RECOMMENDATION**

P'ship S.E. v. Rodriguez, 415 F.3d 135, 139 (1st Cir. 2005) (citing Williamson, 473 U.S. at 195). "Thus, a takings claim ordinarily is considered unripe if the claimant comes directly to a federal court without first seeking compensation through state procedures." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002).

However, a party may be excused from using state resources if all potential state remedies are "unavailable or inadequate." Deniz, 285 F.3d at 146 (citing Williamson County, 473 U.S. at 196-97). Nonetheless, "this exception is narrowly construed, and the claimant must carry the heavy burden of showing unavailability or inadequacy." Deniz, 285 F.3d at 146. In order to satisfy this heavy burden, "if it is unclear whether a particular state-law remedy pertains, the claimant must attempt to exploit it -- and his federal takings claim will not be deemed ripe unless and until he has pursued, and exhausted, that course." Id. Plaintiffs' bare assertions that the administrative process offered to them by ACDEC would not be "impartial, transparent or fair" is inadequate to satisfy their burden. (Docket No. 150, p. 9). Here, plaintiffs simply do not provide any evidence that a state-law remedy would be "unavailable or inadequate." Deniz, 285 F.3d at 146. Instead, plaintiffs make bare assertions through counsel, unsupported by any evidence, that the administrative process offered to them by ACDEC would not be "impartial, transparent or fair". (Docket No. 150, p. 9). However, plaintiffs must "pursue that remedy before they can maintain a federal damages claim, since, when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief they seek." Culebras Enterprises Corp. v. Rios, 813 F.2d 506, 515 (1st Cir. 1987).

Defendants suggest that plaintiffs have access to additional state remedies, citing 21 L.P.R.A. § 4453. In addition, Puerto Rico law appears to provide the additional remedy of an inverse condemnation action. An inverse condemnation proceeding, generally available under Puerto Rico law, "serves as a protection for landowners to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." Deniz, 285 F.3d at 146 (citing Culebras Enterprises

Hill, et al. v. Culebra Conservation and Development Authority, et al.   Page 7
Civil No. 08-1039 (GAG/BJM)
**REPORT AND RECOMMENDATION**

Corp., 813 F.2d at 515).  Courts applying Puerto Rico law have consistently held that a federal takings claim is unripe where an inverse condemnation proceeding has not been pursued.  See, e.g., Deniz, 285 F.3d at 146; Culebras Enterprises Corp., 813 F.2d at 515; Ochoa Realty Corp. v. Faria, 815 F.2d 812, 815 (1st Cir. 1987); Gomez-Frau v. Acevedo Cruz, No. 91-2142, 1992 U.S. App. LEXIS 15160, at *4 (1st Cir. Apr. 28, 1992).  Plaintiffs attempt to distinguish these cases on the grounds that their case did not involve "a de facto taking, but rather a physical taking." (Docket No. 150, p. 6).  However, plaintiffs do not cite any authority even suggesting that such a distinction makes an inverse condemnation proceeding unavailable and the First Circuit has made clear that a claimant's mere "uncertainty" as to whether an inverse condemnation proceeding is available is insufficient to satisfy his burden.  Deniz, 285 F.3d at 147.  Moreover, plaintiffs assert state law claims in this action, including claims under Puerto Rico Article 1802, 31 L.P.R.A. § 5141. Therefore, I find that plaintiffs' claim alleging a violation of the Fifth Amendment is not yet ripe for review in this court, and recommends that it be dismissed.

**II.     Fourteenth Amendment Claim**

Plaintiffs also assert a claim for violation of their procedural due process rights under the Fourteenth Amendment.  The Fourteenth Amendment provides a "guarantee of fair procedure," making unconstitutional "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law."  Zinermon v. Burch, 494 U.S. 113, 125 (1990). In deciding what process is constitutionally-required, the Supreme Court has held that while a pre-deprivation hearing is usually required, in certain cases post-deprivation remedies are sufficient.  Id.  In certain cases, "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful [post-deprivation remedy] satisfies the requirements of procedural due process." Hudson v. Palmer, 468 U.S. 517, 531-532 (1984) (internal citations omitted). Under the Parratt-Hudson line of cases, post-deprivation remedies are sufficient where the deprivation is occasioned by "a random,

unauthorized act by a state employee, rather than by an established state procedure." Hudson, 468 U.S. at 532 (citing Parratt v. Taylor, 451 U.S. 527, 541 (1981)). The rationale for this distinction is that in the case of random, unauthorized acts, "the state cannot predict when the loss will occur" and thus it is "difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." Hudson, 468 U.S. at 532 (citing Parratt, 451 U.S. at 541). To that end, "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." Hudson, at 534.

Here, plaintiffs do not allege that defendants' conduct followed "established state procedure." Hudson, 468 U.S. at 532. In fact, plaintiffs specifically allege that ACDEC "*violated* the express provisions of its Enabling Act" because the provisions of that Act "do not grant [ACDEC] the legal authority to remove, destroy, or alter any structure within the Municipality of Culebra without a prior written order and an opportunity to be heard." (Docket No. 1, ¶ 48-49) (emphasis added). Further, plaintiffs allege that defendant Géigel, who "directed [the] operation", acted "without legal authority or mandate." (Id., ¶ 16). Thus, based on the allegations in the complaint, the actions at issue here could not have been foreseen by the state such that the state could have provided for meaningful pre-deprivation remedies. The fact that Géigel or the Mayor may have planned the deprivation in advance "is simply of no consequence" because on this set of facts, where existing established procedures may have been violated, it does not appear that "the state is in a position to provide for predeprivation process." Id. at 534. Therefore, procedural due process may be satisfied by the use of post-deprivation remedies in this case.

First Circuit precedent confirms this result. In a closely analogous case, plaintiffs alleged that the mayor of a Puerto Rican municipality had removed fences belonging to plaintiffs which separated plaintiffs' land from municipal land, invaded and trespassed onto plaintiffs' property, and caused destruction to plaintiffs' property and coffee farming equipment. Gomez-Frau, 1992 U.S. App.

LEXIS 15160, at *6. The First Circuit held that the actions of the mayor and others were "random and unauthorized" and therefore the case fell "squarely within the *Parratt/Hudson* line of cases" in which a post-deprivation remedy was all that due process required. Id, at *7. Gomez-Frau confirms that even when the state "employee" is the mayor, acting on behalf of a municipality, the actions of the mayor himself may be unauthorized and random. Gomez-Frau, 1992 U.S. App. LEXIS 15160, at *6.

The constitutional inquiry does not end here, however. The applicable rule is that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment *if a meaningful postdeprivation remedy for the loss is available*." Hudson, 468 U.S. at 533 (emphasis added). Thus, because the constitutional inquiry hinges on whether the post-deprivation remedy is adequate, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Therefore, for the reasons discussed with respect to plaintiffs' takings claim, plaintiffs' due process claim is also not ripe for federal review until they have attempted to exercise their post-deprivation remedies. Thus, because "Puerto Rico law on its face appears to provide an adequate post-deprivation remedy," plaintiffs have failed to allege a violation of their due process rights. Gomez-Frau, 1992 U.S. App. LEXIS 15160, at *7.

### III.   State Law Claims

Finally, plaintiffs also seek relief under Puerto Rico Article 1802, 31 L.P.R.A. § 5141, and other state law claims. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

Case 3:08-cv-01039-GAG-BJM   Document 159   Filed 05/05/09   Page 10 of 10

Hill, et al. v. Culebra Conservation and Development Authority, et al.   Page 10
Civil No. 08-1039 (GAG/BJM)
**REPORT AND RECOMMENDATION**

and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. Id.; see also Rodríguez Cirilo v. García, 908 F.Supp. 85, 92 (D.P.R. 1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.") (citation omitted).

In this case, plaintiff's Article 1802 claim seeks damages arising out of the alleged unauthorized taking of his property, a claim that is factually inextricable from plaintiff's just compensation claim for the taking of his property. Because the latter claim must be first addressed in state court, prudence and comity dictate that the state law tort claim should be resolved there as well. In light of plaintiffs' lack of a foundational federal claim, this court should decline to exercise its supplemental jurisdiction over plaintiff's Article 1802 cause of action.

## CONCLUSION

For the reasons discussed above, I recommend that the action be dismissed.

The parties have ten (10) business days to file any objections to this report and recommendation. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 5th of May, 2009.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge